H. FOCKE AND H. M. VON HOLT, TRUSTEES UNDER THE WILL AND OF THE ESTATE OF JAMES GAY, DECEASED, *v.* LLEWELLYN NAPELA GAY ET AL.

No. 1348.

APPEALS FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED JANUARY 6, 1922. DECIDED FEBRUARY 28, 1922.

COKE, C. J., KEMP AND EDINGS, JJ.

TRUSTS—*wasting asset—value ascertained.*

Whenever a leasehold which should have been converted into a permanent investment at the inception of the trust is held by the trustees until the expiration of the lease and it afterwards becomes necessary to ascertain its value it is proper to consider what it produced in order to ascertain its value at the time it should have been converted.

APPEAL AND ERROR—*final decree—effect of appeal from.*

A general appeal from a final decree in equity brings up for review all interlocutory orders, not appealable as of right, which deal with the issues in the case.

SAME—*same—same.*

An appealable order made in a proceeding growing out of the suit but foreign to the subject-matter of it is not brought up for review by a general appeal from the main decree.

OPINION OF THE COURT BY KEMP, J.

The complainants as trustees under the will and of the estate of James Gay, deceased, filed a bill in equity for instructions as to their duties under the will. From the

decree entered by the circuit judge the minor respondents, remaindermen, through their guardian ad litem prosecuted an appeal to this court. Our opinion on that appeal (26 Haw. 1) is referred to for the history of the case. It is sufficient to say here that the cause was remanded with instructions to the circuit judge to modify the decree appealed from so as to require the trustees to set aside as capital the value of the Ookala leasehold. When the matter again came before the circuit judge on the remand he heard evidence as to the rentals produced by the Ookala leasehold from the death of the testator to the expiration of the lease and from that evidence and calculations which he had an actuary make found its value to be $20,668.35. A decree was accordingly entered requiring the trustees to set aside that amount as capital or corpus of the estate. In order to arrive at that value each instalment of rent received by the trustees from said leasehold was considered to be part income and part capital. To determine what portion of each instalment of rent constituted capital calculations were made by the actuary to ascertain what sum put out at six per cent. interest with annual rests on the date of testator's death would amount to each instalment actually received at the time it was received. Each instalment was figured separately and the sum of the amounts thus ascertained equals the value found by the circuit judge. The remaindermen being dissatisfied with the decree in this respect have again appealed to this court.

Appellants complain because the circuit judge entered a new decree instead of modifying the former decree. This constitutes at most an immaterial departure from the instructions contained in the order remanding the cause and is not prejudicial to the rights of the appellants. The circuit judge was compelled to hear evidence in order to comply with the order of this court and having done so it

was not improper for him to enter such decree as the evidence warranted.

On the question of the correctness of the decree it is argued that the following four courses were open to the trustees at the inception of the trust: (1) They could have valued the Ookala leasehold at the inception of the trust and paid to the tenants for life six per cent. interest on such value; (2) they could have sold the leasehold, invested the proceeds and given the income to the life tenants; (3) they could have invested the rents as received and paid the income to the life tenants, and (4) they might (by analogy to a direct gift of money for life) have paid the rents as received to the tenants for life upon receiving reasonable security to preserve the fund for the remaindermen. It is further argued that what the trustees did was to adopt the fourth course except that they did not exact security of the life tenants for the preservation of the fund.

We are not able to concede either that the trustees had the four courses open to them or that they have adopted the fourth course. The only course which the trustees had an absolute right to pursue was to promptly convert the wasting assets into an authorized permanent investment and pay the income derived therefrom, whatever it might be, to the life tenants and preserve the capital amount for the remaindermen. Not having pursued this course their error must now be corrected by requiring them to set aside as capital or corpus of the estate a sum equal to the one which they should have had for that purpose at the time. At the time of the testator's death the value of the Ookala leasehold was uncertain because the amount it would produce was uncertain, but the information now makes its true value as of that date at least theoretically ascertainable, and the calculations which the

circuit judge had the actuary make based on the receipts from the leasehold showed that value.

In *Kinmouth* v. *Brigham,* 5 Allen 270, 279, where a portion of the trust estate consisted of an investment by a special partner in a trading partnership, the court after stating that such investment was one which the court could not sanction said: "It is obviously difficult in this case to determine what was the value of the investment at the testator's decease by any other mode than a computation based upon the whole product ultimately realized from it. * * * We think therefore that upon a just construction of the will equity will require that the profits received by the executors from the special partnership should not be regarded or treated exclusively as income but that they be treated when received from time to time as property belonging to the estate, a part of which is to be invested as capital and a part distributed as income; which parts are to be ascertained by finding what sum if received at the death of the testator would amount, with interest at six per cent: and making annual rests, to the sum actually received, at the time it was received; and that the sum so found should be invested as principal and the remainder distributed as income." The circuit judge evidently had this case before him and was largely influenced by it in adopting the method used to ascertain the capital value of the Ookala leasehold.

In this case, as in the *Kinmouth* case, it is obviously difficult to determine what was the value of the investment at testator's death by any other mode than a computation based upon the whole product ultimately realized from it. We therefore hold that the circuit judge committed no error in thus determining the value of said leasehold. But we are not to be understood as holding that in every such case six per cent. should be taken as the correct rate of interest. Whenever interest is to be al-

lowed for the failure to pay money when it is due the law knows no other rate than the one established by law, but here we are to ascertain between the tenants for life and the remaindermen what part of the gross sum now in hand shall be treated as capital and what part as income, and when we are called upon to find out what sum at a particular, date if invested by the trustees would have been sufficient to produce with its income the gross sum now in hand we must look to the actual income that can be obtained from authorized investments and not to the rate of interest established by law. (*Edwards* v. *Edwards,* 183 Mass. 581, 67 N. E. 658; *Lawrence* v. *Littlefield,* 215 N. Y. 561, 109 N. E. 611; *Furniss* v. *Cruickshank,* 130 N. E. (N. Y.) 625.) No point is made of the rate of interest used in the computations in this case, the objection being to the method used rather than to the details of applying the method.

Shortly after the case was remanded to the circuit court Mr. Edmondson, guardian ad litem for the minor respondents, filed a motion for the allowance to him of $2000 for his services in the supreme court on the former appeal and for the further sum of $1000 for the services of counsel employed by him to assist him on that appeal. At the conclusion of the hearing as to the value of the leasehold in question evidence was heard as to the nature, extent and value of the services of the guardian ad litem after which the circuit judge simultaneously with the entry of the decree entered a separate order allowing him a fee of $1000 "for his services rendered in this case in the supreme court and to date, and a further sum of $1000 for services of counsel employed by the said" guardian ad litem " * * * which total sum is directed to be apportioned between and paid forthwith out of capital and income respectively in the proportions that $20,668.35 and $13,060.89, respectively, bear to the sum of $34,-

329.34." Also upon the oral application of counsel for the trusteees made at the time of the entry of the order it was further ordered that the sum of $750 be paid to him for his services as counsel for the trustees on the appeal and to date, which sum was similarly apportioned between and to be paid out of capital and income. From this order Mr. Edmondson has appealed and urges that the $1000 fee allowed him is inadequate.

The evidence as to the value of the services of the guardian ad litem is conflicting. The circuit judge in order to determine what was a reasonable fee for the guardian ad litem necessarily · acquainted himself with the nature and extent of the services rendered. If he desired more definite information than was acquired during the progress of the trial he was then at liberty to hear evidence as to the nature and extent of the services rendered for which the fee was sought. He was also at liberty to take the judgment of professional men as to the value of such services but such evidence is not necessarily controlling even when it is not conflicting. When the circuit judge had familiarized himself by either method with the nature and extent of the services and the other circumstances generally it became his duty in the exercise of a sound discretion to fix the amount of the fee to be allowed (*Guardianship of Humeku,* 15 Haw. 394; *Magoon* v. *Fitch,* 16 Haw. 13), and unless it appears that he has abused that discretion his action in fixing the amount of the fee will not be disturbed on appeal. In this case the guardian ad litem had already been allowed a fee of $1000 for his services in the first trial in the circuit court. For prosecuting the appeal from the decision of the circuit judge in that trial he has now been allowed $1000 for counsel which he employed to assist him and $1000 for his own services on appeal and the second hearing in the circuit court. Considering the benefits resulting from the

guardian ad litem's services and all the surrounding circumstances we regard the amount allowed by the circuit judge as very liberal. It cannot be said therefore that the circuit judge abused the discretion reposed in him.

It is also argued that that portion of the order apportioning these counsel fees between capital and income is erroneous. The first question which presents itself is one which we have raised and called upon counsel to discuss, viz., whether or not the issue is raised by either of the appeals. The appeal of Mr. Edmondson, although a general appeal from the order in question, does not raise the issue for he has not such an interest in the subject-matter as entitles him to raise it. In fact it is not contended that the issue is raised by his appeal. It is contended, however, in behalf of the remaindermen that their appeal from the decree does raise the issue of the correctness of the apportionment although contained in an order entirely separate from the decree from which they have appealed. It is well settled that an appeal from a final decree in equity brings up for review all interlocutory orders, not appealable directly as of right, which deal with issues in the case. (*Lee Chu* v. *Noar*, 14 Haw. 648; *Scott* v. *Stuart*, 22 Haw. 641.) Whether such an appeal would bring up for review an intermediate order directly appealable, because final in its nature, which settles some issue in the case was not decided by either of the cases cited, nor is it necessary for us to decide it here. But the case of *Scott* v. *Stuart* does decide that an appealable order made in a proceeding growing out of the suit but foreign to the subject-matter of the suit would not be up for review upon an appeal from the decree and that an order or decree directing the payment of money other than the payment into court for further disposition is final in its nature and appealable. There the court was discussing an order entered in a partition proceeding but made in

response to a motion of an attorney, who had theretofore been appointed master in chancery in said partition proceeding, for the allowance to him of a fee for services which. he had rendered in obedience to an order of the circuit judge in resisting an application of one of the parties to said partition proceeding for a writ of prohibition against himself and the circuit judge by which said party sought to prevent further action under said order appointing him master. In response to said motion the circuit judge fixed his fee and ordered it paid by the clerk out of funds on deposit in court in said partition proceeding. In discussing that order this court said: "It should be pointed out, however, that that order was an appealable one, and as it was made in a proceeding independent of the suit for partition and foreign to the subject-matter of that suit, though growing out of it, the order would not, upon final decree, be up for reconsideration or review." Here the order in question was made in the case on trial but in response to the motions of counsel for the trustees and the remaindermen to have their fees for services in a former appeal allowed and would seem to be ruled by the holding in *Scott* v. *Stuart* unless there are other facts which distinguish it. The only fact which has a tendency to distinguish this order from that is a recital in the decree following the portion ordering the trustees to set aside as capital the value of the Ookala leasehold to the effect that the remaindermen will be entitled to this sum on the termination of the trust "less the amount which the trustees are required to pay therefrom on account of counsel fees and disbursements under the separate order in that behalf this day filed."

After careful consideration of this phase of the matter we are of the opinion that the recital in the decree could have no bearing on the question unless it had the effect of making the order allowing counsel fees a part of the

decree.    That it does not have this effect seems clear. The decree orders the full value of the Ookala leasehold as found by the circuit judge set aside by the trustees as capital and the further recital that the remaindermen will be entitled to that sum on the termination of the trust less the amount of fees ordered paid out of it is of no effect for the reason that such recital could not have the effect of irrevocably fixing the amount to which the remaindermen will be entitled at the termination of the trust.    It is not impossible that further sums may be ordered paid out of capital before the termination of the trust, in which event the remaindermen would not be entitled to that amount.    It seems clear to us that the most that can be said of the order in question is that it was made in a proceeding which was collateral to the case on trial.    It did not settle any issue in that case and is foreign to the subject-matter thereof although growing out of it.    It necessarily follows that the general appeal of the remaindermen from the decree does not bring up for review the order allowing and apportioning the payment of counsel fees.

Both the decree and the order should be affirmed and it is so ordered.

*W. L. Stanley* for the trustees.

*H. Edmondson* in proper person and for the minor respondents.

*L. J. Warren* (*W. O. Smith* with him on the brief) for the life tenants.